# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

MARIOKA D. BREWER on behalf of     :
Z.C., a minor,     :

                              :

          Plaintiff,     :

                              :

          v.     :     Civ. No. 17-694-LPS

                              :

NANCY BERRYHILL,     :
Acting Commissioner of Social Security,     :

                              :

          Defendant.     :

---

Marioka D. Brewer, Seaford, Delaware, Pro Se Plaintiff.

David C. Weiss, Esquire, United States Attorney, Heather Benderson, Esquire, Special Assistant United States Attorney, and Margaret W. Reed, Esquire, Special Assistant United States Attorney, of the Office of the United States Attorney, Wilmington, Delaware.

Of Counsel: Nora Koch, Esquire, Regional Chief Counsel, Region III, and Shannon Petty, Esquire, Assistant Regional Counsel, of the Social Security Administration, Philadelphia, Pennsylvania.

## <u>MEMORANDUM OPINION</u>

September 21, 2018
Wilmington, Delaware

STARK, U.S. District Judge:

## I. INTRODUCTION

Plaintiff Marioka D. Brewer ("Brewer" or "Plaintiff"), on behalf of Z.C. ("Z.C."), a minor, who appears *pro se*, appeals from a decision of Defendant Nancy Berryhill, Acting Commissioner of Social Security ("Commissioner" or "Defendant"), finding that Z.C. was not entitled to childhood supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f. The Court has jurisdiction pursuant to 42 U.S.C. §§ 405 and 1383(c)(3).[1] Pending before the Court are cross-motions for summary judgment filed by Brewer and the Commissioner. (D.I. 18, 22)[2] For the reasons set forth below, the Court will deny Plaintiff's motion and will grant Defendant's motion.

## II. BACKGROUND

### A. Procedural History

On May 21, 2015, Brewer protectively filed an application for SSI benefits on behalf Z.C., alleging disability beginning March 1, 2015, due to a mental impairment. (D.I. 15-5 at 12-20) The claim was denied on September 3, 2015 and, upon reconsideration, on March 9, 2016. (D.I. 15-3 at 2-25) Plaintiff filed a request for a hearing on April 25, 2016. (D.I. 15-4 at 14) On January 18, 2017, a hearing was held before an Administrative Law Judge ("ALJ") who later issued a decision finding that Z.C. was not disabled. (D.I. 15-2 at 12-27, 34-54) Plaintiff filed a request for review by

---

[1] Under 42 U.S.C. § 405(g), "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . . Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides . . . ."

[2] The Court construes Plaintiff's opening brief as a motion for summary judgment. (*See* D.I. 18)

the Appeals Council, which was denied on May 22, 2017, so the ALJ's decision became the final

decision of the Commissioner. (D.I. 15-2 at 2-4)

On June 7, 2017, Brewer commenced this action seeking judicial review of the ALJ's

decision. (D.I. 2) Brewer moved for summary judgment on December 7, 2017 (D.I. 18) and the

Commissioner filed a cross-motion for summary judgment on January 8, 2018 (D.I. 22).

**B.      Medical and Mental Health Evidence**

When Z.C. was approximately two years old, she was formally adopted by Brewer. (D.I. 15-

8 at 28) Z.C. had experienced neglect while in the care of her biological mother. (*Id.*) Z.C.

underwent a psychiatric evaluation at Delaware Guidance Services for Children and Youth

("Delaware Guidance") on April 30, 2015. (*Id.* at 28-34) Z.C. was seen at Delaware Guidance after

she had fabricated a story at school about her care that proved to be false. (*Id.*) Z.C. explained that

she told the story because she thought she was in trouble at school. (*Id.*) At times, Z.C. was

irritable, easily tearful, had poor frustration tolerance, and suffered from social withdrawal. (*Id.*)

Examination revealed a well-developed, appropriately-dressed individual with poor eye contact. (*Id.*

at 31) Z.C. was cooperative and anxious with a flat affect and intact memory. (*Id.*) She reported

auditory hallucinations and paranoid delusions. (*Id.*) Z.C. was diagnosed with major depressive

disorder with psychotic features and anxiety not otherwise specified, and she was prescribed

Risperdal. (*Id.* at 32-33) She was next seen at Delaware Guidance on August 11, 2015. (*Id.* at 69-

75)

Z.C. underwent a consultative psychological evaluation by Joseph Keyes, Ph.D. ("Dr.

Keyes"), on September 2, 2015. (*Id.* at 49-53) Examination revealed that Z.C. had good overall

health and did not take any routine medication for health problems. (*Id.* at 50) Brewer provided a

history that Z.C. began treatment at Delaware Guidance in April 2015, and that "medication has

been effective in improving [Z.C.'s] behavior and with her delusions and hallucinations." (*Id.*) Z.C.

had a normal appetite and sleep patterns, and enjoyed drawing, riding her bicycle, watching

television, and taking walks. (*Id.*) Z.C. performed self-care tasks and activities of daily living at an age-appropriate level, performed chores with reminders, and had normal overall adaptive behavior functioning for her age. (*Id.*) Z.C. dressed appropriately, had excellent hygiene and grooming, appropriate behavior, normal motor activity, normal fine and gross motor coordination, clear speech, and clear thinking relevant to the situation. (*Id.*)

Dr. Keyes observed that Z.C.'s abstract thinking skills were in the low-average range for her age, but she could deal with abstract/conceptual problems and had no overt delusional thought processes or hallucinations. (*Id.*) Her intermediate and remote memory were appropriate. (*Id.*) She had average/normal mental alertness, was able to count backwards from 20, could recite the days of the week in backwards order, and could recite the alphabet without error. (*Id.* at 50-51) Z.C. displayed appropriate and adequate social and interpersonal skills as she answered questions posed to her, initiated age-appropriate conversations, has friends, and was noted to play appropriately. (*Id.* at 51) Dr. Keyes also observed that Z.C. had appropriate mood and no noted irritability, in contrast to the symptoms reported earlier in 2015. (*Id.*) Z.C. relayed to Dr. Keyes that with medication her auditory hallucinations had "gone away." (*Id.*) She was more interactive with others, not as depressed, and did not exhibit paranoid delusions. (*Id.*) Dr. Keyes found Z.C. pleasant with appropriate mood and affect, normal alertness and memory, and adaptive behavior. (*Id.*) He opined that Z.C.'s current treatment appeared to have been effective in stabilizing her depression and psychotic features. (*Id.* at 52)

On September 2, 2015, Christopher King, Psy.D. ("Dr. King"), reviewed the medical records and opined that Z.C. is limited but did not meet, equal, or functionally equal, a listed impairment. (D.I. 15-3 at 5-7) With regard to the relevant domains of functioning, Dr. King opined that Z.C. had no limitation in acquiring and using information, attending and completing tasks, moving about and manipulating objects, or caring for oneself, and had a less than marked limitation in the domain of interacting and relating with others. (*Id.* at 67)

3

A November 6, 2015 psychoeducation school evaluation states that Z.C. "participated appropriately" in class, raised her hand to answer questions, confidently answered when called on, displayed appropriate affect, engaged in the lesson, watched the teacher carefully when problems were modeled, had good eye contact with teachers and peers, remained focused during small group reading lessons, actively participated in the discussion, and worked cooperatively with her partner. (D.I. 15-8 at 54-57) Z.C. followed instructions, accepted suggestions without resistance or negativity, and had no unusual affect or behaviors. (*Id.* at 57) She demonstrated average adaptive skills for her age. (*Id.* at 65)

Z.C.'s December 3, 2015 Section 504 accommodation plan ("December 2015 Plan") states that Z.C. had difficulty focusing when not seated near the teacher, and anxiety impacted her confidence in her ability to work. (*Id.* at 84) The December 2015 Plan accommodated and addressed Z.C.'s needs in the physical arrangement of the room by seating Z.C. close to where instruction was being presented, next to a positive role model, and away from distracting stimuli. (*Id.*) For lesson presentation it addressed Z.C.'s needs by: (1) refocusing attention as needed; (2) pre-teaching content vocabulary; (3) using visuals as a learning tool; (4) repeating directions as needed; and (5) reading items and questions. (*Id.*) It addressed assignment/worksheets through the "chunking of larger assignments." (*Id.*) The December 2015 Plan did not provide any behavior accommodations. (*Id.* at 84-85)

On February 10, 2016, Z.C.'s fifth-grade teacher, Pamela Vandewende ("Vandewende"), completed a teacher questionnaire that indicated that Z.C. had no problem to slight problems in the domain of acquiring and using information as she was an independent worker, wanted to do well in class, and was most attentive when seated close to the front near a positive role model. (D.I. 15-6 at 74-81) Vandewende's questionnaire indicated there was one obvious problem and no problem to slight problems in the remaining 12 of 13 areas associated with attending and completing tasks; no problem to slight problems in interacting and relating with others; no problem in moving about and

4

manipulating objects; and a slight problem knowing when to ask for help, but no problem in the remaining nine areas of caring for herself. (*Id.* at 76-79) Vandewende stated that the medicine Z.C. was taking helped her to be successful in the classroom and that Z.C. did not show any signs of her condition while in school. (*Id.* at 80)

The record contains two other teacher questionnaires, both unsigned and undated. (D.I. 15-7 at 32-37; D.I. 15-9 at 37-44) One indicates that Z.C. had no to slight problems in the domain of acquiring and using information; an obvious problem in five areas related to attending and completing tasks, but no to slight problem in the remaining eight areas; a slight to obvious problem interacting and relating with others that was now "much improved;" no problems moving about and manipulating objects; and no to slight problems in caring for herself. (D.I. 15-9 at 37-44) The other questionnaire completed by an unidentified social studies teacher indicates that Z.C. had slight problems in the domain of acquiring and using information; no problem to slight problems in the domain of attending and completing tasks; and no problem interacting and relating with others. (D.I. 15-7 at 32-27)

On February 11, 2016, Z.C. was seen at Delaware Guidance. (D.I. 15-9 at 2-4) A week later, on February 18, 2016, Dr. Keyes conducted a second consultative examination. (D.I. 15-8 at 86-90) Dr. Keyes' report notes that Z.C. was an average student who did not have significant behavior problems at school, but occasionally became "upset" according to her mother. (*Id.* at 86) He noted Z.C.'s overall good health and that she did not take other routine medication for health problems aside from Risperdal, which had been increased a day earlier after Z.C. reported the auditory hallucinations that had previously stopped had returned. (*Id.* at 87) Many of the findings in the second consultative examination are similar to those in the initial exam. (*Id.* at 87-89) Dr. Keyes found Z.C.'s mood was sad and flat, she exhibited moderate clinical symptoms of depression, and she had multiple auditory hallucinations and delusions related to her depression. (*Id.* at 88) Dr. Keyes diagnosed major depressive disorder, recurrent, moderate, with mood congruent psychotic

features and attention deficit hyperactivity disorder predominantly inattentive presentation. (*Id.* at 89)

On March 2, 2016, state agency psychologist Jane Curran, Ph.D. ("Dr. Curran"), opined that Z.C.'s medically determinable impairment or combination of impairments is severe, but does not meet, medically equal, or functionally equal the listings. (D.I. 15-3 at 20-24) Dr. Curran also opined that Z.C. either had no limitation or less than marked limitations in all areas of domain of functioning. (*Id.* at 20-21)

Z.C. continued treatment at Delaware Guidance on May 11, 2016, August 11, 2016, and November 11, 2016. (D.I. 15-9 at 5-14) Psychiatric mental health nurse practitioner Theresa Parkhurst ("Parkhurst") completed a children's physical mental functional capacity questionnaire related to behavioral problems, dated December 16, 2016. (D.I. 15-9 at 46-48) Parkhurst indicated that Z.C. demonstrated no evidence of limitation in moving about and manipulating objects; less than marked limitations in acquiring and using information, attending and completing tasks, and interacting and relating with others; and marked limitations in her ability to care for herself and her health and physical well-being. (*Id.* at 47-48) Parkhurst explained that Z.C. needs direction to shower, maintain cleanliness and care for herself, and she has a history of refusing medication leading to acute psychosis. (*Id.* at 48)

In Z.C's report card for the 2016 academic year, marking periods 1 and 2 show that Z.C. earned A's, B's, and C's, progressed satisfactorily in other areas, and was noted to be an "excellent student who is always engaged and works extremely hard on her assignments and tests in all classes." (D.I. 15-8 at 83) The report card stated that, at times, Z.C. struggled when working independently, and recommended that she read more and work on vocabulary and reading comprehension. (*Id.*) Z.C.'s 2016 grades for marking periods 1 and 2 had somewhat improved when compared to her report card for the 2015 academic year. (*Id.* at 91)

## C.    The Administrative Hearing

An administrative hearing took place on January 18, 2017, before an ALJ, with testimony from Z.C. and Plaintiff, who was represented by counsel.

### 1.    Z.C.'s Testimony

Z.C. provided her birthday of November 14, 2004, testified she was in the sixth grade, and was doing "good" in school. (D.I. 15-2 at 38-39) She explained that, at times, she had to come home from school because she "got in trouble." (*Id.* at 40) Z.C. testified she does her homework regularly and has friends at school. (*Id.*) Z.C. lives with her mother, stepfather, brother, and sister. (*Id.* at 41) Her mother gives her chores to do such as cleaning her room and washing the dishes; she does not always do them, but does not get in trouble. (*Id.* at 43)

### 2.    Brewer's Testimony

Brewer testified that Z.C. exhibited behaviors that were not "things that children do." (*Id.* at 45) Z.C. hears three different voices, and they are very real to her. (*Id.* at 45-47) Z.C. attends school and, at times, is resistant to it, at times has wandered away from school, and at times her behavior escalates. (*Id.* at 48-49) Sometimes Z.C. becomes so depressed that she does not want to bathe, and she is not appropriate with her hygiene. (*Id.* at 49) Brewer testified that Z.C. does not have friends at school and friends do not come to their house. (*Id.* at 50) Brewer testified that, although it is better, Z.C. continues to call her a few times a month to come and get her from school for reasons such as she is being picked on, she hates her teacher, or someone is doing something to her. (*Id.* at 53)

## D.    The ALJ's Findings

The ALJ found that Z.C. was born on November 15, 2004, was a school-age child on May 21, 2015, the date the application was filed, and is currently an adolescent. (D.I. 15-2 at 15) Z.C. has not engaged in substantial gainful activity since May 21, 2015, the application date. (*Id.*) Z.C. has the following severe impairments: psychotic disorder, not otherwise specified; major depressive

7

disorder; anxiety disorder, not otherwise specified; and attention deficit hyperactivity disorder. (*Id.*)

Z.C. does not have an impairment or combination of impairments that meets or medically equals

the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

Z.C. does not have an impairment or combination of impairments that functionally equals the

severity of the listings. (*Id.* at 16) With regard to the six functional equivalence domains, the ALJ

found that Z.C. has: (1) less than marked limitation in acquiring and using information; (2) less than

marked limitation in attending and completing tasks; (3) less than marked limitation in interacting

and relating with others; (4) no limitation in moving about and manipulating objects; (5) no

limitation in the ability to care for herself; and (6) no limitation in health and physical well-being.

(*Id.* at 21-22, 24-27) The ALJ concluded, based on his findings, that Z.C. has not been disabled

since May 21, 2015, the date the application was filed. (*Id.* at 27)

## III.  LEGAL STANDARDS

### A.  Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue

of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). A

party asserting that a fact cannot be -- or, alternatively, is -- genuinely disputed must be supported

either by citing to "particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those made for

the purposes of the motions only), admissions, interrogatory answers, or other materials," or by

"showing that the materials cited do not establish the absence or presence of a genuine dispute, or

that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P.

56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come

forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at

587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

**B.    Review of the ALJ's Findings**

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. § 405(g); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Third Circuit has explained that "a single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence -- particularly certain types of evidence (e.g., that offered by treating physicians) -- or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the inquiry is not whether the Court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.2d at 1190. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). However, evidence that was not submitted to the ALJ can be considered by the Appeals Council or the District Court as a basis for remanding the matter to the Commissioner for further proceedings, pursuant to the sixth sentence of 42 U.S.C. § 405(g). *See Matthews*, 239 F.3d at 592. "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 657 (D. Del. 2008) (internal quotation marks omitted). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

## IV.  DISCUSSION

### A.  Disability Determination Process for Children

The Federal Supplemental Security Income program provides benefits to disabled individuals who meet certain statutory income and resource limitations. *See* 42 U.S.C. § 1381. The statute provides that a child under the age of 18

10

shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).

"In order to determine whether a child is disabled, the [ALJ] considers all relevant evidence including medical evidence, test scores, school records, and information from people who know the child and can provide evidence about functioning -- such as the child's parents, care givers, and teachers." *K.K. on behalf of K.S. v. Commissioner of Social Security*, 2018 WL 1509091, at *5 (D.N.J. Mar. 27, 2018) (internal quotation marks omitted).

The Social Security Administration must determine that the following three factors are satisfied before determining that a child is disabled: (1) the child is not working; (2) the child had a "severe" impairment or combination of impairments; and (3) the impairment, or combination of impairments, was of Listing-level severity, meaning the impairment(s) met, medically equaled, or functionally equaled the severity of an impairment in the Listings. *See T.C. ex rel. Z.C. v. Commissioner of Soc. Sec.*, 497 F. App'x 158, 160 (3d Cir. Sept. 17, 2012) (citing 20 C.F.R. § 416.924(a)); *see also* 20 C.F.R. pt. 404, subpt. P, App. 1 (listings at step three for child disability determinations). "To determine whether a child's impairment(s) are medically or functionally equal in severity to an impairment contained in the Listings, the Commissioner assesses all functional limitations caused by the child's impairment(s)." *Pallens v. Colvin*, 2015 WL 6502100, at *2 (D.N.J. Oct. 26, 2015) (citing 20 C.F.R. § 416.926a(a)). "To determine whether a child's impairment(s) are functionally equivalent to listed impairments, the Commissioner evaluates the effect of the child's impairment(s) in six domains of functioning." *Id.* (citing 20 C.F.R. § 416.926a(b)(1)). The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-

being. *See* 20 C.F.R. § 416.926a(b)(1)(i)-(vi) (2016). To functionally equal a listing, the child's

impairment must result in "marked" limitations in two domains or an "extreme" limitation in one

domain. 20 C.F.R. § 416.926a(a) (2017).

### B. Whether the ALJ's Decision is Supported by Substantial Evidence.

In his decision, the ALJ determined that Z.C. had not engaged in substantial gainful activity

since May 21, 2015; has the severe impairments of psychotic disorder not otherwise specified, major

depressive disorder, anxiety disorder not otherwise specified, and attention deficit hyperactivity

disorder; that Z.C.'s impairments did not meet or medically equal any of the listed impairments in 20

C.F.R. pt. 404, subpt. P, app. 1; and that Z.C.' impairments did not result in either marked

limitations in two domains of functioning or an extreme limitation in one domain of functioning

such that would functionally equal a listing. Accordingly, the ALJ found Z.C. was not disabled.

Brewer seeks an award of SSI benefits on behalf of Z.C. She argues that Z.C's disability

limits her everyday activities and refers to Z.C.'s paranoia, depression, hallucinations and/or hearing

voices, anxieties, her inability focus or complete tasks, loss of interest, fears, worries, and mood

swings. (D.I. 19) Brewer does not assign error but contends that Z.C. will live with the condition

daily, her condition "affects us all and has been costly," and Z.C. "needs the financial support."

(D.I. 18, 19) The Commissioner moves for summary judgment on the grounds that substantial

evidence supports the ALJ's finding that Z.C. did not meet or medically equal a listed impairment

and that Z.C. did not functionally equal a listed impairment. In addition, the Commissioner argues

that Brewer's post-hearing submissions do not present a basis for remand.

### 1. Did Not Meet or Medically Equal a Listed Impairment

The ALJ's determination that Z.C. did not meet or medically equal a listed impairment is

supported by the evidence of record. Plaintiff does not specify the listing or listings she contends

Z.C. meets.

The listings bestow an irrefutable presumption of disability; consequently, "[f]or a claimant to show that [her] impairment matches a [listed impairment], it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). To establish medical equivalency, a claimant must present medical evidence that her impairment, unlisted impairment, or combination of impairments, is equal in severity and duration to all of the criteria of a listed impairment. *Id.* at 520; *see also* 20 C.F.R. § 416.926.

In general, the required level of severity for listings for mental disorders for children, in this instance 112.03, 112.04, 112.06, and 112.11,[3] may be established when the criteria for both parts A and B are met or when the criteria in paragraph C are satisfied. *See* 20 C.F.R. pt. 404, subpt. P, App. 1 § 112.00A.2. The part A criteria "are medical findings that substantiate the presence of the mental disorder." *Cunningham v. Commissioner of Social Security*, 507 F. App'x 111, 116 n.4 (3d Cir. Dec. 13, 2012); *see also* 20 C.F.R. pt. 404, subpt. P, App. 1, § 112.00A.2.a. To satisfy the "B" criteria, the mental impairment must result in "extreme" limitation of one or "marked" limitations in two of the four areas of mental functioning (*i.e.*, understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself). *See* 20 C.F.R. pt. 404, subpt. P, App. 1, § 112.00A.2.b. Paragraph C requires demonstration that the mental disorder is "serious and persistent." *Id.* at § 112.00A.2.c. This means "there must be a medically documented history of the existence of the disorder over a period of at least 2 years" as set forth in § 112.00G. *Id.* A claimant bears the burden of establishing that her impairment meets or equals a listed impairment. *Poulis v. Commissioner of Social Security*, 474 F.3d 88, 92 (3d Cir. 2007).

---

[3] Listing 112.11 has two paragraphs, designated A and B, and the mental disorder must satisfy both paragraphs. *See* 20 C.F.R. pt. 404, subpt. P, App. 1 § 112.00A.2. Listings, 112.03, 112.04, and 112.06 have three paragraphs, designated A, B, and C, and the mental disorder must satisfy the requirements of both paragraphs A and B or the requirements of both paragraphs A and C. *See id.*

The ALJ reasonably determined that based upon the record and testimony presented, the evidence does not indicate that Z.C.'s impairments are at a listing level. The ALJ considered both the B and C criteria. As to paragraph B criteria, the ALJ noted that there is no evidence of an extreme limitation or marked limitation of two areas. In addition, Z.C. is an average student academically with a 504 Plan and participated in regular classes. Z.C. has no behavior accommodations in her 504 Plan and no significant absences from school. Examinations by Dr. Keyes indicate that Z.C. has appropriate, albeit limited, social and interpersonal skills and has mild attentional disturbance, and within normal limits adaptive behavior functioning and appropriate hygiene.

As to paragraph C criteria, the ALJ considered that while Z.C. had gradual medication changes, the record did not document any evidence of hospitalizations, significant absences from school, or more intensive medical treatment. Finally, State agency consultants opined that Z.C. did not meet or equal a listing.

Upon review of the record, the Court concludes that substantial evidence supports the ALJ's findings that the severity of Z.C.'s impairments, considered singly and in combination, do not meet or medically equal the criteria of any impairment listed in 112.03 (schizophrenia spectrum and other psychotic disorders), 112.04 (depressive, bipolar, and related disorders), 112.06 (anxiety and obsessive-compulsive disorders), and 112.11 (neurodevelopmental disorders).

### 2.     Did Not Functionally Equal a Listed Impairment – Six Domains

The ALJ considered each of the six domains of functional equivalence in finding Z.C. not disabled. The record supports the ALJ's determination that Z.C. had less than marked limitation in the domain of acquiring and using information. In assessing this domain, the ALJ considers how well a child acquires or learns information, and how well he can use the information he has learned. *See* 20 C.F.R. § 416.926a(g). The ALJ recognized that Z.C. had some problems taking tests independently and struggled with vocabulary and comprehension but considered that Z.C. is an

14

average student academically. The ALJ also noted that the teacher questionnaire indicated at most slight problems in this domain. The ALJ considered the record that Z.C. is an independent worker, wanted to do to well in class, pays attention, and is most attentive when seated near the front. In addition, the ALJ considered that Z.C.'s speech and thinking were normal, while mental status examinations revealed abstract thinking skills in the low-average range and mildly below average/normal immediate/working memory consistent with a mild disturbance in the attentional process.

The record supports the ALJ's determination that Z.C. had less than marked limitation in the domain of attending and completing tasks. This domain gauges how well a child is able to focus and maintain attention, and how well he begins, carries through and finishes activities, including the pace at which he performs them and the ease with which he changes them. *See* 20 C.F.R. § 416.926a(h). The ALJ again considered that Z.C. is an average student academically. He considered Z.C.'s auditory hallucinations, anxiety, and poor frustration tolerance, while at the same time noting that examination revealed only a mild disturbance in the attentional process. Z.C. performs chores with reminders. The teacher questionnaires showed no problems to few problems in this domain. The ALJ considered that Z.C. has a 504 Plan to address interference with concentration and focus due to anxiety. Also, while Z.C. sometimes talks to others in class, she works quietly after being redirected.

The record supports the ALJ's determination that Z.C. had a less than marked limitation in the domain of interacting and relating with others. The domain of interacting and relating with others considers how well the child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. *See* 20 C.F.R. § 416.926a(i). The ALJ considered that Z.C. has some problems in this area, while noting that school records show some referrals, but the 504 Plan does not have behavior accommodations.

15

Z.C. has a few friends and limited social and interpersonal skills. She enjoys drawing, bicycle riding, watching television, and taking walks. In addition, Dr. Keyes noted that Z.C. did not have significant behavior problems at school, and she displayed limited but appropriate social and interpersonal skills. Also, the State agency consultants opined that Z.C. had less than marked limitations in this domain.

The record supports the ALJ's determination that Z.C. had no limitation in moving about and manipulating objects. This domain considers how well a child is able to move his body and objects. See 20 C.F.R. § 416.926a(j). Teacher questionnaires indicate no problems in this domain. In addition, the record indicates that Z.C. can walk, run, throw a ball, ride a bike, jump rope, use scissors, and dress/undress dolls and/or action figures.

The record supports the ALJ's determination that Z.C. had no limitation in the ability to care for herself. This domain considers how well a child maintains a healthy emotional and physical state, including coping with stress and change, and whether a child takes care of his own health, possessions, and living area. See 20 C.F.R. § 416.926a(k). A teacher questionnaire indicates that Z.C. had only a slight problem knowing when to help and a slight problem handling frustration appropriately and being patient when necessary. The record reflects that Z.C. dresses appropriately and her personal hygiene and grooming were appropriate, adequate, or even excellent. At times, Z.C. has trouble sleeping, but not frequently. Also, Z.C. at times did not want to take her medication, but the record also noted that the family had assistance with Z.C., and she did not continuously refuse to take medication. Also, State agency consultants opined that Z.C. did not have any limitations in this domain.

Finally, with regard to health and physical well-being, the evidence of record supports the ALJ's finding that Z.C. had no limitation in this domain. This domain considers the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on the child's health and functioning that were not considered in the child's ability to move about and

16

manipulate objects. *See* 20 C.F.R. § 416.926a(1). The ALJ considered all of the relevant evidence of record relating to this domain. The record reflects that Z.C. has no significant health concerns reported in medical records, she exhibited overall good health, and she does not take routine medication for health problems. Both State agency consultants opined that Z.C. did not have any limitations in this domain.

The ALJ found that Z.C. did not have an impairment or combination of impairments that functionally equals the severity of the listings because she did not have a marked limitation in two or more domains and did not have an extreme limitation in any of the six domains. Upon a review of the record as a whole, the Court concludes that the ALJ's findings are supported by substantial evidence of record. Therefore, the Court will deny Brewer's motion for summary judgment and will grant the Commissioner's motion for summary judgment.

## C. Post Hearing Submissions

In support of her position, Brewer submitted two additional letters and an exhibit. (D.I. 19, 20, 21) The exhibits consist of a January 17, 2017 504 Accommodation Plan, excerpts from an April 30, 2015 evaluation, Parkhurst's December 16, 2016 questionnaire, and school records. (D.I. 21) Brewer also submitted the statement of Tykea Brewer. (D.I. 20)

When a claimant submits evidence after the ALJ's decision, that evidence cannot be used to challenge the ALJ's decision on the basis of substantial evidence. *See Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). Pursuant to 42 U.S.C. § 405(g), sentence six, this Court may order a remand based upon evidence submitted after the ALJ's decision, but only if the evidence satisfies three prongs: (1) the evidence is new; (2) the evidence is material; and (3) there was good cause why it was not previously presented to the ALJ. *See id.*

Brewer does not meet these requirements. Some of the exhibits were considered by the ALJ, and some were not. For the most part, the evidence that was not before the ALJ is not new and was available at the time the ALJ issued his decision. The January 17, 2017 504 Plan was not

considered by the ALJ, but Brewer offers no reason why it was not provided to the ALJ -- whose decision was not rendered until January 26, 2017 -- or why it was not submitted with the request for review by the Appeals Council on May 22, 2017. A portion of the school records were considered by the ALJ -- for the dates March 7, 2012 to May 12, 2015 -- but Brewer did not submit the records for the dates September 20, 2016 through November 15, 2017. (*Compare* D.I. 15-6 at 2, *with* D.I. 21 at 12) Again, Brewer provides no explanation for why this evidence was not presented prior to the ALJ's decision. Moreover, during the January 18, 2017 administrative hearing, Plaintiff's counsel advised the ALJ that additional records were not needed to complete the case. (D.I. 15-2 at 37)

Brewer provides no reason, must less good cause, for her failure to present this evidence to the ALJ or the Appeals Council. Accordingly, the Court finds no basis to remand pursuant to the sixth sentence of 42 U.S.C. § 405(g).

## V.    CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's motion for summary judgment and will grant Defendant's cross-motion for summary judgment. (D.I. 18, 22)

An appropriate Order will be entered.